UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 19-98-HRW

GARY SIMPKINS,                                         PLAINTIFF,

v.                    MEMORANDUM OPINION AND ORDER

BOYD COUNTY FISCAL COURT, *et al.*,                    DEFENDANTS.

This matter is before the Court upon Defendants Boyd County Fiscal Court, Carl Tolliver in his Official Capacity as Boyd County Fiscal Court Commissioner, John Greer in his Official Capacity as Boyd County Fiscal Court Commissioner, Thomas Jackson in his Official Capacity as Boyd County Fiscal Court Commissioner, Steven Towler in his Official Capacity as  Boyd County Judge Executive and Bill Hensley in his Official Capacity as Boyd County Jailer's Motion for Summary Judgment [Docket No 13]. The matter has been fully briefed by the parties. [Docket Nos. 18 and 19]. For the reasons set forth herein, the Court finds that Defendants are entitled to judgment as a matter of law.

**I.**

This case arises from the September 12, 2018 arrest and subsequent detention of Gary Simpkins.   He testified that on that day, shortly after 11:00 p.m., he was driving himself to the hospital because he was experiencing chest pain. [Deposition of Gary Simpkins, Docket No. 15, p. 86 – 89].  He was stopped by a police officer in Salyersville, KY, for speeding. *Id.*  The police officer discovered an outstanding warrant for Simpkins' arrest originating out of another county, on a charge of harassing communications, and served that warrant on Simpkins during the traffic

1

stop. [Docket No. 13-2]. The police officer then took Simpkins to Kings Daughter's Medical Center to have his chest pains evaluated. [Docket No. 15, p. 87].

Records from the Emergency Room at KDMC do not indicate that Simpkins suffered acute injury or illness other than chest pains. [KDMC Records, Docket No. 18-3]. The treatment note states:

> No acute findings. Patient very agitated, wants admitted so he will not have to go to jail. Refuses blood pressure medications. Threatens and swears at staff and officer after finding he will be discharged.

*Id.* at p. 7. He was discharged in "stable condition." *Id.*

The police officer then took Simpkins to the Boyd County Detention Center ("BCDC"). [Docket No. 15, p. 90. He arrived at approximately 4:00 a.m. on September 13, 2018, and went through the booking process during which he disclosed having a serious medical condition which required attention, listed as "cancer" and that he was taking prescription medication that needed continuation while he was incarcerated. [BCDC Records, Docket No. 18-4].

Simpkins was then placed in a cell with two other inmates. [Docket No. 15, p. 95 – 96]. He testified that he started pressing the call button in the cell with the intention of asking deputy jailers for his medications. *Id.* at p. 97 – 98, 101, 103, 114. The first time he did so, an unknown deputy came to the cell and talked to him but did not get him any medicine. *Id.* at p. 104. Simpkins testified that he had to "beat on the door to get their attention." *Id.* at p. 97. In response, Simpkins stated that he was told by jail staff to "sit down and shut up." *Id.*

At some point, he was moved to D-Block. *Id.* at p. 120. He testified that a "red-headed skinny guy", later identified as Deputy Lane, led him to a hallway, slammed his head against a wall, and told him to "keep your head right there." *Id.* at p. 105, 125 – 127) Then, Simpkins

testified that the "red-headed skinny guy" put on black leather gloves and "just started beating me in the side." *Id.*

Simpkins claims that Deputy Lane then stripped him of his clothes, put him in a "paper dress," strapped him into a chair, strapped him across the neck "as tight as he could get it" and pushed the chair into a small room, and left. *Id.* at p. 106, 142. Simpkins claims to have passed out at that point. *Id.*

Thereafter, Simpkins' uncle arrived at the BCDC to post bond. *Id.* p. 140 – 141. By that time, a new shift had taken over, and the deputy jailer on duty entered the cell where Simpkins was lodged and removed him from the chair. *Id.*

Simpkins was released from the BCDC at 11:05 p.m. on September 13, 2018, having been detained for 19 hours and 6 minutes. [BCDC Release Report, Docket NO. 13-3].

## II.

On September 12, 2019, Simpkins filed a Complaint in the Boyd Circuit Court against the Boyd County Fiscal Court, County Jailer Jimmy Joe Burchett in his individual and official capacities[1]; and, Fiscal Court Commissioners Carl Tolliver, John Greer, Thomas Jackson, Judge Executive Stephen Towler, and the current County Jailer Bill Hensley in their official capacities. [Docket No. 1-1].

In his Complaint, Simpkins asserts causes of action under 42 U.S.C. § 1983 for the alleged violation of his constitutional rights as a result of the alleged deprivation of his medications and physical force to which he was allegedly subjected during his 19 hours in custody.

---

[1] Burchett – who has *not* been served with a summons in this action – was the Boyd County Jailer on September 13, 2018.

3

In light of Simpkins' assertion of a 42 U.S.C. § 1983 claim, Defendants timely removed the action to this court.

Defendants now seek summary judgment.

### III.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Of course, [the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Binay v. Bettendorf,* 601 F.3d 640, 646 (6th Cir.2010) (quoting *In re Calumet Farm, Inc.,* 398 F.3d 555, 558 (6th Cir.2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex,* 477 U.S. at 322–23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive

4

summary judgment).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial.... In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir.2009) (quoting *Everson v. Leis,* 556 F.3d 484, 496 (6th Cir.2009)).

### IV.

Section 1983 provides in pertinent part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

In order to establish liability under § 1983, the plaintiff must show that (1) he was deprived of a right secured by the United States Constitution or the laws of the United States and (2) he was subjected or caused to be subjected to the constitutional deprivation by a person acting under color of state law. *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994) (citing *Flagg Bros. v. Brooks,* 436 U.S. 149, 155 (1978)).

**A.**

The Boyd County Fiscal Court is not an entity *sui juris,* but merely an instrument of Boyd County.  *See Harris v. Hon*, 2016 WL 1237476 (W.D. Mich. 2016).  As such, it cannot be sued. *Id.* Therefore, Plaintiff cannot maintain his claims against the Boyd County Fiscal Court.

**B.**

Simpkins' claims against Tolliver, Greer, Jackson, Towler and Hensley in their official capacities also fail.  A claim against a government official in his official capacity is equivalent to a claim against the government itself, the claims against them are equivalent to a claim against Boyd County. *Coley v. Lucas County*, 799 F.3d 530 (6th Cir. 2015) ("Claims brought against Telb in his official capacity are the equivalent of claims brought against the county as a government entity."); *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464 (6th Cir. 2014) ("A suit against an individual in his or her official capacity is the equivalent of a suit against the governmental entity.").  Therefore,  Tolliver, Greer, Jackson, Towler and Hensley in their official capacities  are entitled to summary judgment.

**C.**

A municipality may be liable under § 1983 if it can be shown that it had a "deliberate indifference of the rights of its inhabitants" and such failure constituted the "moving force behind the constitutional violation."  *Monell v. Dept. Soc. Serv.,* 436 U.S. 658, 694 (1978). The Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 403 (1997) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81 (1986); and *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389,  (1989)).

6

The finding of a policy or custom is the initial determination to be made by the trial court in a municipal liability claim. If the plaintiff presents sufficient evidence to demonstrate a genuine issue of material fact as to the existence of a policy or custom, then it is for the finder of fact to determine deliberate indifference. *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 509 (6th Cir.1996).

A "custom" for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" must include deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law. *Doe,* 103 F.3d at 507–08 (internal quotation marks and citations omitted). "[O]fficial policy often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Id.* A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim. Conclusory allegations will not lie. *Culberson v. Doan,* 125 F.Supp.2d 252, 263–64 (S.D.Ohio 2000).

Although Plaintiff alleges a *Monell* claim in his Complaint, he has no evidence to support it. The burden is upon Plaintiff in this regard, yet the only so-called proof he offers is a report issued by the Department of Justice in February 2019 which is not only inadmissible but also irrelevant. [Docket No. 18, p. 176]. The report is based on information the Department of Justice's review of incident reports from BCDC dated between March 2016 and November 2016 and its site visit which occurred in November 2016. *Id.* at p. 176, 177, 179. The period covered by the report predates Plaintiff's stay in the BCDC by almost 2 years. Therefore, any conclusions

in the Report are likely not reflective of conditions at the BCDC in September 2018 and, without any additional or corroborating evidence, are irrelevant to Plaintiff's claims.

Further, the report, by its own terms, cannot be used as evidence in Plaintiff's lawsuit. It specifically provides: "The Department [of Justice] does not serve as a tribunal authorized to make factual findings and legal conclusions, and nothing in this Notice should be construed as a factual finding or legal conclusion. Accordingly, this Notice is not intended to be admissible evidence and does not create legal rights or obligations." *Id.*

Finally, Plaintiff has developed no evidence that any policy, procedure or custom of Boyd County was the moving force behind the excessive force allegedly used against him by persons who are not parties to this case. Plaintiff did not propound any written discovery, did not take a single deposition, did not issue any subpoenas, and did not retain any expert witness to support the theory that his 2018 injuries were caused by the 2016 incidents  discussed in the DOJ Report.   He simply filed suit and expected the DOJ report to do the rest. As Defendants note "that dog will not hunt."

## V.

The party opposing summary judgment must show that he can make good on the promise of his pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. *Alpert v. United States,* 481 F.3d 404, 409 (6th Cir.2007).  Plaintiff has not done so.

Accordingly, **IT IS HEREBY ORDERED** that Defendants Boyd County Fiscal Court, Carl Tolliver in his Official Capacity as Boyd County Fiscal Court Commissioner, John Greer in his Official Capacity as Boyd County Fiscal Court Commissioner, Thomas Jackson in his Official Capacity as Boyd County Fiscal Court Commissioner, Steven Towler in his Official

Capacity as  Boyd County Judge Executive and Bill Hensley in his Official Capacity as Boyd County Jailer's Motion for Summary Judgment [Docket No 13] be **SUSTAINED.**

This 9th day of April 2021.

Signed By:

_**Henry R Wilhoit Jr.**_

**United States District Judge**